1 BARRETT S. LITT, SBN 45527
blitt@mbllegal.com
2 LINDSAY BATTLES, SBN 262862
lbattles@mbllegal.com
3 McLANE, BEDNARSKI & LITT, LLP
975 E. Green Street
4 Pasadena, California 91106
Telephone: (626) 844-7660
5 Facsimile: (626) 844-7670
6
7 SCOTT B. RAPKIN, SBN 261867
E-Mail: scottrapkin@rapkinesq.com
8 MICHAEL S. RAPKIN, SBN 67220
E-Mail: msrapkin@gmail.com
9 RAPKIN & ASSOCIATES, LLP
475 Washington Blvd.
10 Marina del Rey, California 90292
Telephone: (310) 319-5465
11 Facsimile: (310) 319-5355
12
13
14 Attorneys for Plaintiff AGUSTIN HERRERA
15
16 **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| 18 AGUSTIN HERRERA, on behalf of himself and others similarly situated, | Case No. 2:22-cv-01013-HDV-PDx |
| 19 | |
| 20 Plaintiff, | [Honorable Hernan D. Vera] |
| 21 vs. | |
| 22 | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;** |
| 23 COUNTY OF LOS ANGELES, et al. | |
| 24 Defendants. | **[FILED CONCURRENTLY WITH [PROPOSED] ORDER; DECLARATIONS AND EXHIBITS]** |
| 25 | |
| 26 | **Date:    February 27, 2025** |
| 27 | **Time:    10:00 a.m.** |
| 28 | **Ctrm:    5B** |

29

1    TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that, on February 27, 2025, at 10:00 a.m., or as

3    soon thereafter as this matter may be heard in Courtroom 5B of the United States

4    District Court for the Central District of California, 350 West First Street, Los

5    Angeles, California 90012, Plaintiffs will, and hereby do, move the Court to

6    preliminarily approve the proposed settlement in this case, and to authorize the

7    mailing and other forms of notice to class members.

8         This motion is unopposed and is based on the accompanying Memorandum

9    of Law, declarations, the stipulation of all parties to entry of the proposed

10   Preliminary Approval Order, the proposed Preliminary Approval Order and

11   exhibits thereto filed concurrently, the files and records in this case, and on such

12   further evidence as may be presented at a hearing on the motion.

13

14    DATED: January 27, 2025              Respectfully submitted,

15                                         McLane, Bednarski & Litt, LLP
16                                         By: /s/ Barrett S. Litt
17                                           Barrett S. Litt
                                           Attorneys for Plaintiffs
18
19                                         By: /s/ Lindsay Battles
                                             Lindsay Battles
20                                         Attorneys for Plaintiffs

21
22                                         Rapkin & Associates

23                                         By: /s/ Scott Rapkin
24                                           Scott Rapkin
                                           Attorneys for Plaintiffs
25

26

27

28
29

1

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................1

II.   PROCEDURAL HISTORY.....................................................................3

III.  CERTIFIED CLASSES .........................................................................6

IV.  TERMS OF THE SETTLEMENT..........................................................6

     A.   DISTRIBUTION TO CLASS MEMBERS ..................................7

     B.   ADDITIONAL TERMS ...............................................................7

V.   THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL ........................................................................................8

     A.   PRELIMINARY APPROVAL UNDER FRCP 23(E)(1)(B).................8

         1.   Adequacy of Representation................................................9

         2.   Arms-Length Negotiations ...............................................11

         3.   Adequacy of the Relief ....................................................12

            a)  The Settlement Represents a Positive  Outcome Considering the Costs, Risks and Delay of Trial and Appeal............................12

            b)  The Settlement Includes a Fair and Effective Means of Distributing the Settlement to Class Members in the Form of Direct Monetary Compensation ...............................................13

            c)  A Reasonable Attorney Fee Will Be Decided by the Court.....14

         4.   Equitable Treatment of Class Members .......................................15

         5.   The Settlement is Fair and Reasonable to Minor Claimants........17

     B.   NOTICE PLAN & CLAIMS PROCEDURE ................................19

     C.   THE CLASS NOTICE.........................................................20

VI.  CONCLUSION......................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................13

*Eastwood v. Yamhill Cnty.*,
  2021 WL 1237111,n.1 (D. Or. Apr. 2, 2021) ...........................................3

*Gary H. v. Hegstrom*,
  831 F.2d 1430 (9th Cir.1987) ....................................................................3

*Glass v. UBS Fin. Servs., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan.26, 2007)............................................16

*Hopson v. Hanesbrands Inc.*,
  2009 WL 928133 (N.D. Cal. 2009) ..........................................................16

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ....................................................................15

*In re High-Tech Employee Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)..........................................16

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 153265 (N.D. Cal. Jan. 13, 2016).............................................16

*Mugglebee v. Allstate Ins. Co.*,
  2018 WL 1410718 (S.D. Cal. Mar. 21, 2018) ..........................................18

*R.G. v. Koller*,
  415 F. Supp. 2d 1TA129 (D. Haw. 2006) .................................................3

*Robidoux v. Rosengren*,
  638 F.3d 1177 (9th Cir. 2011) ..................................................................18

ii

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................15, 16

*Salmeron v. United States*,
   724 F.2d 1357 (9th Cir. 1983) ........................................................................17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..........................................................................16

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal.1995).....................................................................16

**Statutes**

California Welfare & Institutions Code § 827 ...................................................5, 10

**Rules**

F.R.Civ. P. Rule 17....................................................................................................17

F.R.Civ. P. Rule 23....................................................................................................13

F.R.Civ. P. Rule 23(e)(1)............................................................................................8

F.R.Civ. P. Rule 23(e)(2)........................................................................................2, 8

F.R.Civ. P. Rule 23(e)(3)............................................................................................9

## MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION

This class action lawsuit arises from what Plaintiff Herrera and the putative class contend are unconstitutional conditions of confinement in Los Angeles County's three juvenile hall facilities: Central Juvenile Hall (CJH), Barry J. Nidorf Juvenile Hall (BJN), and Los Padrinos Juvenile Hall (LP), and its several juvenile camps. All these facilities were or are operated by Los Angeles County under the auspices of the Los Angeles Department of Probation, which has persistently failed to ensure reasonably safe conditions for the youth assigned to its care.

Plaintiff Agustin Herrera and the putative class he represents (hereafter collectively "Plaintiffs") contend that the dehumanizing living conditions within the Los Angeles County juvenile halls and camps were/are inherently punitive and inflicted harms upon detained youth that are independent from and/or exceed the inherent discomforts of confinement. With regard to living conditions, Plaintiffs assert that the Los Angeles County Probation Department maintained policies, practices and customs that resulted in consistently dehumanizing conditions of confinement. These dehumanizing conditions include lack of access to bathrooms and being forced to urinate and defecate in their cells, using milk cartons, towels, trash receptacles or anything else they can find; wearing dirty underwear used by others; sleeping with insufficiently warm bedding and clothing; living under the constant threat of excessive and unreasonable use of chemical force (pepper spray) and the excessive and unreasonable use of room confinement (i.e. solitary confinement); illegal shackling; and lack of access to rehabilitation programming and outdoor recreation.   Plaintiffs contend that these conditions are inherently punitive and contribute to the further traumatization of youth, undermining rehabilitation and mental health outcomes, and are not reasonably related to any legitimate penological interests.

Plaintiffs further contend that Los Angeles County violated juvenile detainees' constitutional rights by maintaining policies, practices and customs that

1

1    resulted in the excessive and unreasonable use of mechanical restraints, excessive
2    use of solitary confinement/room confinement, and excessive use of pepper spray;
3    that these conditions were inherently punitive, and constituted an exaggerated and
4    unconstitutional response to the safety needs of the Probation Department, in
5    violation of both the Fourth and Fourteenth Amendments.

6        Plaintiffs also assert Defendants acted with deliberate indifference to the
7    serious mental health needs of youth confined to the juvenile halls by failing to
8    provide sufficient assessments, sufficient individual and group mental health
9    treatment, comprehensive ongoing assessment and crisis de-escalation.  Defendants
10   similarly failed to provide an environment conducive to psychiatric treatment by
11   confining youth to living environments with squalid and retraumatizing conditions
12   that exacerbated their mental health conditions and undermined therapeutic progress.

13       Concurrently filed with this motion for preliminary approval of the settlement
14   is Plaintiffs' motion for class certification, which details the conditions and
15   constitutional violations Plaintiffs allege. This motion is for preliminary approval of
16   a class settlement and thus assumes that class certification will be granted. F.R.C.P.
17   23(e)(1)(B) states that the "parties must provide the court with information sufficient
18   to enable it to determine whether to give notice of the proposal to the class"; the
19   court "must direct notice ... if giving notice is justified by the parties' showing that
20   the court will likely be able to: (i) approve the proposal under Rule 23(e)(2) [setting
21   out the criteria for final approval of the settlement]; and (ii) certify the class for
22   purposes of judgment on the proposal." This motion demonstrates that final approval
23   is likely and the separately filed class certification motion demonstrates that an order
24   certifying the class is likely (or alternatively the court may grant it in conjunction
25   with the preliminary approval hearing).

26       Liability in this case is based on whether the Los Angeles County Probation
27   Department maintained policies, practices and customs that violated the due process
28   rights of juvenile detainees, and resolution of that issue will resolve liability in this
29   case. Federal courts recognize that juveniles confined to a juvenile correctional

facility have a constitutional right to reasonably safe conditions of confinement, freedom from unreasonable bodily restraint, and meaningful recreation opportunities. Juvenile detainees also have a right to be free from conditions that amount to punishment and/or reflect deliberate indifference to their basic needs. The Due Process clause of the Fourteenth Amendment governs Plaintiff's claim. *See, e.g., Gary H. v. Hegstrom,* 831 F.2d 1430, 1432 (9th Cir.1987) (Due Process standard applied to conditions at an Oregon juvenile detention facility where the juvenile justice system was noncriminal and nonpenal in nature); *Eastwood v. Yamhill Cnty.*, 2021 WL 1237111, *2 n.1 (D. Or. Apr. 2, 2021) ("the Fourteenth Amendment's standard applies to minors in juvenile detention in Oregon regardless of whether they are pre- or post-adjudication because the stated purpose of juvenile detention is not punishment, but rehabilitation."); *R.G. v. Koller*, 415 F. Supp. 2d 1129, 1152 (D. Haw. 2006) (applying due process standard to juveniles confined by Hawaii Family Courts where wards were adjudicated delinquent and not convicted of a crime). While Defendants dispute the validity of Plaintiffs' allegations, the parties have agreed to enter into this Settlement Agreement to avoid the mutual risks of further litigation.

## II.    PROCEDURAL HISTORY

Counsel for the parties have a history of past civil rights litigation that allowed them to streamline discovery of essential materials (and gather other evidence) in order to properly evaluate the case and attend a relatively early mediation (1.5 years after filing the lawsuit). This process was aided by the fact that there was a long history of governmental reports over many years documenting problem conditions in the juvenile halls, including from the United States Department of Justice, California Attorney General's Office, California Board of State and Community Corrections (BSCC) and Los Angeles County Office of the Inspector General (OIG). In addition, Plaintiffs retained highly regarded juvenile justice experts, Barry Holman and Hillary Cairns, who submitted a detailed report addressing how conditions over the class period reflected a departure from widely-accepted

standards for juvenile detention facilities. Litt Dec., ¶ 8.

Plaintiffs propounded comprehensive document requests, including information contained in LA County's Probation Case Management System (PCMS) regarding youth detained since February 14, 2002 (twenty years before the filing of the complaint, which was the relevant time period for the class because of minor tolling); a range of information for each class member (without identifying information) addressing issues relevant to them, including complaints, reports or other documents regarding the conditions/conduct alleged in the complaint; database information concerning such conditions; materials regarding the database structure, instructions, data fields, manuals and similar materials relevant to navigating the databases; sample database reports; data logs; classification and housing assignment materials; security or housing classification training materials; general staff training materials; organizational charts and staffing for various positions; supervisorial activities; documents regarding provision of clean clothing, bathroom access, room or solitary confinement, clean underwear and bedding, grievances, food sanitation and edibility, internal communications and emails, staffing shortages, youth access to telephones or other means of communication to communicate with family, access to counsel, recreational rehabilitative and religious service access materials, program and activity logs. This is a very summary description of Plaintiff's initial set of document requests. Litt Dec., ¶ 9. In addition, Plaintiffs' counsel consulted multiple experts and interviewed numerous putative class members, and lawyers who represent putative class members, about their experiences in the juvenile halls during the class period.

In the Rule 26 Report, the parties advised the court of the possibility of resolving the case "[i]n light of the broad scope of the allegations, the long class period, the history of governmental reports regarding the conditions, and the vast discovery needed to litigate both class certification and liability," and that the parties had "committed to promptly preparing the case for private mediation, to be scheduled as soon as discovery has progressed enough to allow productive, fully

informed negotiations." Litt Dec., ¶ 10

The parties were able to agree on documents to be produced, and, particularly important for mediation purposes, a process for accessing confidential, sealed information. There were substantial obstacles to obtaining class data due to the constraints of state law prohibiting access to juvenile records. After briefing before, and a discussion with, the Magistrate Judge, the parties stipulated that the County would be ordered to 1) access the putative class members' criminal files to ascertain what, how and whether it can produce the information set forth above; 2) to the extent the County deemed it feasible, to produce the above information in an anonymized fashion, redacting names and other personally identifiable information; 3) if the County deemed it unfeasible to produce any of the above information, to explain the basis for this belief to Plaintiffs' counsel; 4) the parties would then meet and confer to see if a resolution could be reached or otherwise pursue further relief from the Court; and 5) any production under seal would be for attorneys, their staff and experts, the Court and the mediator only. Through these means, the parties carved out a process for materials sealed by California Welfare & Institutions Code § 827 to be accessed. Litt Dec., ¶ 11.

This was critical because, for Plaintiffs and the parties to analyze the potential class damages, information regarding time in custody for each class member was needed. Through this process, the parties obtained data through April 2023 regarding the number of people in the Juvenile Halls Class (7354), the number of incarceration periods (17,088), the total number of detention days (858,964), the breakdown of detention days by facility, the number of movements (during which class members were automatically shackled (19,453)), the mean number of detention days (117 rounded up), and the median number of detention days (15). These figures cover through April 30, 2023, and will ultimately be adjusted since the settlement covers all class members through final approval to whom class notice was attempted to be sent. Litt Dec., ¶ 12.

On August 22, 2023, the parties held a mediation with the well-known

5

mediator Anthony Piazza and agreed to a total all-inclusive settlement of $27.5 Million for the juvenile halls, subject to approval by the Los Angeles County Board of Supervisors and then this Court. In a later mediation session, the parties agreed to enlarge the settlement to encompass the juvenile camps, for a total additional amount of $2.5 Million (for a total cumulative settlement of $30 Million). This figure was based on the number of camp days of detention covered by the settlement and per day value of the camps at 25 % of the halls (because conditions at the camps were significantly less severe – albeit still bad – as compared to the conditions at the halls). Litt Dec., ¶ 4.

After a bidding process, Plaintiff selected Simpluris as the Claims Administrator and Defendants do not oppose this selection. Simpluris has prepared a notice strategy to maximize the potential to reach as many class members as possible. The parties recognize the challenges in reaching class members covering several years who were juveniles while in custody, and for whom address information will frequently be stale.

Defendants have reviewed this motion and have advised that they do not anticipate filing a substantive opposition.

## III.   CERTIFIED CLASSES

In the accompanying class certification motion, the parties seek certification of the following class: All persons who were born on or after February 15, 2002, continuing until final approval of the settlement, to whom class notice was sent or attempted to be sent, and who were detained in a Los Angeles County Juvenile Hall or Juvenile Camp.  This motion and the settlement agreement are premised on the assumption that class certification as proposed will be granted.

## IV.   TERMS OF THE SETTLEMENT

The total size of the non-reversionary settlement fund is $30,000,000, from which costs of class administration, consultant/expert and litigation costs, mediation costs, incentive/service awards, and attorneys' fees will be taken, with the remaining funds to be distributed among claiming class members. Depending on a variety of

6

factors, the parties expect the amount available for distribution to the class after payment of the foregoing fees and costs (the "Remainder") is in the range of $20,000,000 or more. (This estimate is based on assuming an award of the maximum fees to be sought (30% of the $30,000,000 Class Fund), litigation costs, and estimated class administration costs ($163,000). It could end up higher depending on certain court rulings and class administration costs, but this is a reliable low-end estimate.

The agreement expressly provides that the settlement is non-reversionary. All of the Class Fund available for distribution to the class will be distributed to class members based upon the distribution formula explained *infra.* None of the Class Fund shall revert to Los Angeles County in any form.

### A.    DISTRIBUTION TO CLASS MEMBERS

The parties have adopted a straightforward distribution method. For each day of detention in the Juvenile Halls, points are awarded to each claiming class member. (The details of the formula are summarized at §V(A)(3)(b), *infra.*

### B.    ADDITIONAL TERMS

The settlement agreement contains the following, additional material terms:

➢    Incentive award to the sole Class Representative (Agustin Herrera) in the amount of $25,000. This figure is in addition to whatever Mr. Herrera's share of the Remainder as a claiming class member amounts to.

➢    Plaintiffs will file a motion for attorneys' fees and costs to be approved by the Court. The settlement agreement provides that Plaintiffs' counsel may request up to 30% of the class fund but not more, plus reimbursement of litigation costs. The final determination of the appropriate attorneys' fee will be made by the Court.

➢    Payment of the third-party class settlement administration costs to the chosen class administrator. After carefully reviewing bids from multiple candidates, Plaintiffs' counsel selected Simpluris, which Defendants do not challenge.

➢    The notice plan includes direct notice via multiple channels (mail, text, email, social media and organizational outreach) to the extent Simpluris can identify

such means with a reasonable possibility of reaching class members. Simpluris estimates approximately $38,000 for this undertaking. (Experience has shown that it is not possible to estimate class notice costs with a great degree of accuracy at the outset because it often occurs that unforeseen events can affect the accuracy of such estimate. Accordingly, this is a preliminary figure.)

The settlement resolves all damages claims of class members related to conditions in the juvenile halls and camps through the final approval of the settlement as to persons to whom notice was sent or attempted to be sent except that claims of sexual abuse, sexual assault, rape, sexual harassment, or other sex related violations of class members' rights are not included in the settlement and are not released by the settlement. The terms of the settlement are set forth in greater detail in the exhibits attached to the Proposed Preliminary Approval Order (specifically in the Settlement Agreement), which exhibits are as follows:

Exhibit A          Settlement Agreement

Exhibit B          Proposed Class Notice(s)

Exhibit C          Class Administration Bid and Credentials

## V.    THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

### A.    PRELIMINARY APPROVAL UNDER FRCP 23(E)(1)(B)

FRCP 23(e)(1) provides the standard for preliminary approval. Notice of a proposed settlement requires the parties to show that: (1) the court will be able to certify the class and (2) will "likely" approve the settlement under Rule 23(e)(2), which sets forth criteria for final approval of the settlement proposal. Federal Rule of Civil Procedure 23(e)(1)(B). We do not address the likelihood of class certification since the Court will simultaneously consider Plaintiffs' Motion for Class Certification.

Under Rule 23(e)(2), a settlement may be approved only on a finding that it is fair, reasonable, and adequate after considering the following factors:

(A)    the class representatives and class counsel have adequately represented

1    the class;

2    (B)    the proposal was negotiated at arm's length;

3    (C)    the relief provided for the class is adequate, taking into account:

4         (i)    the costs, risks, and delay of trial and appeal,

5         (ii)    the effectiveness of any proposed method of distributing relief

6              to the class, including the method of processing class-member

7              claims;

8         (iii)   the terms of any proposed award of attorney's fees, including

9              timing of payment; and

10    (D)    any agreement required to be identified under Rule 23(e)(3); and

11    (E)    the proposal treats class members equitably relative to each other.

12    We address these factors below, but in a consolidated fashion.

13         ***1.    Adequacy of Representation***

14         Mr. Herrera and class counsel adequately represented the class. Given the

15    history of public reporting from local, state and federal officials regarding the

16    deficiencies of the conditions in LA County facilities, both sides recognized that this

17    case was suitable for potential early settlement. Nonetheless, to ensure that all

18    relevant factors were known and considered, the parties agreed that the County

19    would provide discovery of essential materials prior to an early mediation.

20         Plaintiffs propounded discovery seeking a wide range of County documents

21    necessary to analyze the duration, severity, and constitutionality of the conditions

22    addressed in the complaint. For example, to assess whether the halls provided

23    sufficient access to rehabilitation programming and outdoor recreation, Plaintiffs

24    sought and reviewed many thousands of pages of departmental policies, activity

25    calendars, program logs, grievances, and incident logs reflecting when programming

26    and recreation activities were cancelled for reasons other than weather. Plaintiffs

27    similarly assessed policies, incident logs, and grievances addressing use of force,

28    room confinement, mechanical restraints, access to clean clothing and bedding,

29    bathroom access, food sanitation, youth access to telephones or other means of

communication to communicate with family/counsel, and access to counsel.

The parties were also able to agree on documents to be produced and a process for accessing confidential, sealed information. There were substantial obstacles to obtaining class data due to the constraints of state law prohibiting access to juvenile records. After briefing before, and a discussion with, Magistrate Judge Patricia Donahue, the parties stipulated  that the County would be ordered to 1) access the putative class members' criminal files to ascertain what, how and whether it can produce the information set forth above; 2) to the extent the County deemed it feasible, to produce the above information in an anonymized fashion, redacting names and other personally identifiable information; 3) if the County deemed it unfeasible to produce any of the above information, to explain the basis for this belief to Plaintiffs' counsel; 4) the parties would then meet and confer to see if a resolution could be reached or otherwise pursue further relief from the Court; and 5) any production under seal would be for attorneys, their staff and experts, the Court and the mediator only. Through these means, the parties carved out a process for materials sealed by California Welfare & Institutions Code § 827 to be accessed.

Accessing this information was critical because, for Plaintiffs and the parties to analyze the potential class damages, information regarding time in custody for each class member was needed. Through this process, the parties obtained data through April 2023, which was summarized above. In addition, Plaintiffs retained two prominent experts, who produced extensive reports regarding the juvenile halls and the impact of the halls' conditions and treatment on juveniles detained there over the years.   These expert reports are being submitted as exhibits to the contemporaneously filed class certification motion.

Because the settlement covers people in juvenile custody to whom class notice was sent or attempted to be sent through the final approval order, the data provided to date will have to be supplemented both by additional class member information after August 2023 (the date through which class data was already provided), and with class members' identities and last known location information to allow attempts

to reach all class members. Accordingly, a further class data court order will be needed to provide this information regarding the identities of class members and class member identification. Provision of this information will be addressed in a separate motion or a stipulation filed concurrently with this motion.

Pursuant to a further order, the County agrees to compile class member identifying data and contact information, and provide it directly to the claims administrator. This data will include identifying data, and where available, contact information for class members' parents, guardians and next of kin.

**Plaintiffs also request that the County** **make best efforts to identify class members who are currently in-custody of the county whether in a juvenile detention hall or camp, a Los Angeles County jail facility, or a Secure Youth Treatment Facility (SYTF). Defendants object to this request and may file an opposition reflecting the basis for their objection.**

While this case does not fit the model of a heavily contested liability and class certification case, there is no question that each side vigorously pursued the best interests of the parties in reaching a proposed settlement.

Plaintiffs' counsel are highly experienced class action litigators, and have litigated many law-enforcement related class actions. Litt Dec. ¶¶ 3, 5, 8. There are no conflicts of interest between class representative Herrera and the Class.

### 2.     *Arms-Length Negotiations*

The original settlement terms (regarding the juvenile halls) were negotiated at arms' length with the assistance of an experienced mediator, Anthony Piazza, on August 22, 2023. Declaration of Barrett S. Litt, ("Litt Dec.,") ¶ 4. Subsequently, the parties held a mediation session with Mr. Piazza to determine whether agreement could be reached to cover the juvenile camps as well. The parties agreed to add the juvenile camps to the settlement for a total of $2,500,00 additional funds, making a combined total settlement of $30,000,000). Plaintiffs recognize the significant disparity between the halls valuation and the camps valuation. While some of this is a function of the lower number of camp days compared to hall days, the disparity in

valuation of the halls versus the camps is primarily because, based on counsel's evaluation, the conditions in the camps were not nearly as bad as the conditions in the halls. The distribution formula assigns substantially more points to a hall day than to a camp day (about a 4 to 1 ratio). This point system is based on the ratio between the separately negotiated values for a hall day versus a camp day reached in mediation. (A factor as well was the potential that the camp claims could ultimately fail, which was greater than the potential that the hall claims could fail.) Litt Dec., ¶¶ 5-6.

### 3.    *Adequacy of the Relief*

The proposed settlement represents a highly favorable outcome to class members. While there aren't similar juvenile settlements given the egregious problems in Los Angeles County, Plaintiffs' counsel have settled many jail conditions cases and consider this settlement to be very favorable to class members based on the likely average class member recovery. *Ibid.*

### a)    *The Settlement Represents a Positive  Outcome Considering the Costs, Risks and Delay of Trial and Appeal*

This settlement provides a positive outcome to class members considering the costs, risks and delay of trial and appeal. After costs and maximum fees, there should be $20 Million or more to distribute to class members, the total of whom is likely to be under 10,000 individuals. Since the funds will be distributed to claiming class members who qualify as class members, counsel's experience is that a 25% claims rate is a very favorable claims rate in a jail class action.  Assuming a 25% claims rate, and 10,000 class members, there would be 2500 claims, making the *mean recovery* approximately $7,200 per claiming class member, with many class members receiving well over $10,000.  (A 25% claims rate may well be high, given potential difficulties in locating class members.) *Ibid.*

The individual recoveries in this case represent a positive outcome for class members. Without this settlement, even assuming that Plaintiffs would have prevailed on liability, it is uncertain whether classwide general damages would have

been found available and, if so, how much they would have been.  And even if Plaintiffs could have secured substantial classwide general damage awards, without this settlement, Defendants could have challenged any classwide general damages on appeal. Statutory damages were not available because no state law claims survived the statute of limitations (which is not tolled for minors under California law in claims against governmental entities or employees). Similarly, although Plaintiffs believe they would have been successful in a contested class certification motion, the settlement smoothed the way for an uncontested class certification motion. (While the Court still must find that the Rule 23 factors are met, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997),  a favorable outcome to a class certification motion is self-evidently more likely when it is uncontested, given that the court has considerable discretion in determining whether to certify the class.)

Absent settlement, this case likely would have spread out over several more years litigating class certification and liability, and even with prevailing on those issues (which Plaintiffs' counsel believed Plaintiffs would have done), resolution of either class wide general damages (which Defendants would vigorously challenge) or individual damages claims would remain, all of which would require time and resources during which class members would continue to go uncompensated. If individualized damages determinations were required, a far smaller percentage of the class would likely have come forward to pursue them in comparison to the number that will file claims (which requires little effort by class members). In addition, absent settlement, it is very likely that Defendants would have appealed any grant of class certification, any liability findings, and any adverse judgment, all of which would have significantly stalled class members actually receiving money.

### b) The Settlement Includes a Fair and Effective Means of Distributing the Settlement to Class Members in the Form of Direct Monetary Compensation

The settlement provides for a straight forward claims procedure whereby class members will be able to submit a claim form by mail, email or online. The claim

form itself simply requires class members to confirm their identity and contact information. The distribution formula is similarly straightforward and is based solely on the number of days in juvenile custody, with heavier weighting towards days in the halls. Specifically, a class member will receive four points for each day in a juvenile hall and one point for each day in a juvenile camp. The points for all valid claimants will be totaled, and each claimant's award will be based on their percentage share of the total number of points (determined by dividing the total points for each claimant by the total points for all claimants to yield a percentage of the recovery available). The total amount available for distribution to claimants is the $30 Million settlement, less awarded attorney's fees, litigation costs, class administration costs, and any incentive award to Class Representative Herrera.

Once the claims period closes and the settlement is finally approved, Plaintiffs' database experts will calculate each claimant's percentage share of the settlement fund and distribution amount. Using these calculations, the claims administrator will distribute the amounts determined for each claimant. Because experience shows that a certain number of issued checks do not get cashed, there will be a second round of distribution of funds from uncashed checks. Any funds still remaining after that will be distributed to a non-County recipient as agreed to by the parties, per ¶41 of the Settlement Agreement.

### c)    *A Reasonable Attorney Fee Will Be Decided by the Court*

As addressed in the settlement agreement, Plaintiff's counsel will file a motion for attorneys' fees and costs to be approved by the Court. The agreement provides that Plaintiffs' counsel may request up to 30% of the class fund but not more, plus reimbursement of litigation costs. There is no clear-sailing agreement (an agreement in which a class action defendant agrees not to contest the class lawyer's petition for attorneys' fees), which are considered to increase the likelihood of collusion. Nor is the amount of fees a separately negotiated figure, but rather is an amount subject to the court's determination, which effectively eliminates the potential for collusion between class counsel and defendants or the award of a fee

disproportionate to the class reward. *See, e.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947–49 (9th Cir. 2011); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (where "payments were to be made from the settlement fund" a clear sailing agreement "does not signal the possibility of collusion").

### 4. *Equitable Treatment of Class Members*

The treatment of class members is equitable. All class members receive identical treatment for their time in juvenile hall custody. And, although the point system is different for time in the camps than in the halls, that is due to the difference in the severity of the conditions, and the differing presence of government reports detailing the conditions in the halls versus the camps. All hall class members are treated the same and all camp class members are treated the same. There is substantial overlap between hall and camp class members as many class members spent time both in the halls and camps.

Nor does the proposed incentive award reflect unduly preferential treatment of class representative Herrera. It provides a slight benefit to Mr. Herrera ($25,000 in addition to his class member formula award). Without Mr. Herrera, the class would not have benefited at all, and so an incentive award to him is reasonable and justified. Mr. Herrera was regularly available to class counsel to answer questions regarding his experiences in juvenile detention. He also facilitated meetings with other putative class members and was interviewed at length by Plaintiffs' psychiatry expert, Terry Kupers. Although, as it turned out, the need for him to participate in discovery or trial did not arise, he was available to be deposed or respond to written discovery had the need arisen, and he regularly and promptly responded to inquiries from class counsel regarding issues in the case. In addition, any time a person agrees to act as a class representative against law enforcement, there is an inherent risk and fear that s/he could become a target of law enforcement action. The proposal for incentive awards was at Class Counsel's initiative, and his proposed incentive award reflects counsel's assessment of the value of his contributions to the case, the risk

15

taken by him and the size of the settlement. The class substantially benefited from his efforts, resulting in a one-of-a-kind class settlement. No agreement was made with Mr. Herrera prior to settlement to seek an incentive award, nor was there any discussion with Mr. Herrera regarding seeking an incentive award prior to the mediation that resulted in the settlement. Litt Dec., ¶ 4.

The requested $25,000 incentive award is within the range of reasonable incentive awards. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (identifying factors to consider in evaluating the reasonableness of incentive awards); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 153265, at *2–3 (N.D. Cal. Jan. 13, 2016).

The award here – totaling $25,000 – represents a very small proportion (less than 1/10th of 1%, or less than .10%) of the Class Fund, which is also a factor in evaluating the reasonableness of proposed incentive awards. *See, e.g., id.* at *3 (0.196%.of class fund); *Hopson v. Hanesbrands Inc*., 2009 WL 928133, at *10 (N.D. Cal. 2009) (1.25% of the settlement amount).

Numerous cases have approved incentive awards of $25,000 or more. *See, e.g., Cathode Ray Tube (CRT) Antitrust Litig., supra* ($25,000 for each of ten class representatives in $127.45 Million settlement); *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *16 (N.D. Cal. Jan.26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal.1995) (awarding $50,000 to a lead plaintiff); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (awarding $120,000 and $80,000 to class representatives in a case that settled for $415 million, noting such awards were in line with "megafund" cases, and collecting cases); *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007

16

WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving award of $25,000 for each of four class representative in a six-year case settling for $45 million where named plaintiffs provided help with informal discovery, insight into an industry, and "placed something at risk by putting their names on a complaint against one of the largest brokerage houses in America"). Given inflations since these awards, they would be significantly higher in current dollars.

### 5.    The Settlement is Fair and Reasonable to Minor Claimants

Although Mr. Herrera is no longer a minor, a small minority of class members will be minors at the time class notice issues. There are currently 1,970 class members who have not yet turned 18 (11.6% of 9,187 total class members). This percentage will be lower by the time of final approval because some of these class members may turn 18 during the 6-month notice period (and more will turn 18 before payments are distributed).  In this section, we separately address proposed mechanisms to ensure that minors' interests are sufficiently protected.

Since class members are nonparties to the lawsuit, there is no requirement for appointment of a guardian *ad litem* for individual minor claimants. *See* FRCP 17.  While this case does not require appointment of guardians *ad litem* for individual minor claimants, the Court nevertheless has a duty to protect the interests of minors because minors who choose to file claims in this class action will mandatorily release claims against the County arising from the conditions of their confinement in juvenile detention facilities during the class period (except sexual abuse).[1]

---

[1] Central District Local Rule 17-1.2 provides that "[n]o claim in any action involving a minor or incompetent person shall be settled, compromised, or dismissed without leave of the Court embodied in an order, judgment, or decree." The requirement for court approval for settlement of minors' claims reflects the general principle that "the court in which a minor's claims are being litigated has a duty to protect the minor's interests." *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983).

In evaluating settlements implicating the interests of minor parties, district courts limit their scope of review to whether the net amount distributed to each plaintiff is fair and reasonable, in light of the facts of the case, the plaintiff's specific claim, and recovery in similar cases. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181-1182 (9th Cir. 2011) ("So long as the net recovery to each minor [or incompetent] plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties."); *see also, Mugglebee v. Allstate Ins. Co.*, No. 14-CV-2474 JLS (JMA), 2018 WL 1410718, at *2 (S.D. Cal. Mar. 21, 2018).

For the reasons set forth in §V, A, 3, 4 (above), this settlement is fair and reasonable to all class members, including minor class members. This class settlement provides the best mechanism to ensure that each young person receives meaningful compensation for the harm they endured while in-custody; many class members will receive an excellent recovery, upwards of $7,500. Moreover, the notice plan for this settlement (addressed in V, B, below) includes notice to both minors and their parents/guardians, enhancing protection for minors.

Class counsel has experience handling numerous jail/prison class actions including class actions involving minors and other vulnerable populations (e.g. persons with severe mental health issues, GBTQ jail inmates, and undocumented immigrants). Should any minors call with questions about their rights under the settlement, class counsel is well-equipped to assist them in understanding their options. If any minors seek legal advice regarding the viability of potential individual claims (i.e. if they are considering opting out to pursue individual claims), class counsel will refer them to experienced civil rights attorneys who can assist them in assessing their individual claims.

The majority of minor claimants will turn 18 within 1-2 years from the settlement distribution date. Minors' settlement funds will be held by the claims administrator in interest-bearing accounts until their 18th birthday, at which point the funds will be automatically disbursed.

1    **B.    NOTICE PLAN & CLAIMS PROCEDURE**

2        This class action presents challenging class notice issues. The settlement class

3    is comprised of former (or in a small number of cases current) juvenile detainees, all

4    of whom were held in deplorable conditions that have plagued LA County's juvenile

5    facilities for years. Most class members are likely now legally adults who no longer

6    reside at the same address they had when detained by LA County Probation.

7        Plaintiffs anticipate greater difficulty in reaching class members than would

8    be expected in the typical class action settlement or even a typical jail class action.

9    Young persons tend to move with greater frequency as they leave their parents'

10   homes and pursue educational and/or work opportunities. For financial reasons,

11   young persons are also more likely to share housing with family members or friends,

12   where they may not be the person on the rental agreement, mortgage, or utility bills.

13   Claims administrators typically update class member contact data by consulting

14   credit-reporting databases such as TransUnion, Equifax and Experian.  However,

15   because many class members are young adults, they may not have credit histories,

16   bank accounts and utility bills that would help ensure up-to-date address entries in

17   credit reporting databases.

18       Plaintiffs' counsel sought bids from three potential claims administrators:

19   JND, Epiq and Simpluris.[2] Each class administration candidate was asked to

20   describe their class administration experience and expertise. After reviewing

21   proposals, Plaintiffs' counsel determined that Simpluris was the best choice in this

22   case, taking account of the qualifications of each candidate and the pricing. Litt Dec.,

23   ¶ 7.

24       Plaintiffs' counsel and Simpluris have designed an outreach and notice plan

25   for this case that provides for multiple channels of direct notice via text message and

26   email, as well as mailed notice for those who do not respond to text or email, and for

27   whom such contact information is not available. Notice will be sent to class members

28   as well as their parents/guardians.

29

_____

[2] JND elected not to make a proposal.

Before issuing notice, the Class Administrator will use skip trace databases to locate updated address, mobile phone number and email address information for as many class members and their parents/guardians as possible. Using this information, the Administrator will issue direct notice to all class members using mail, text, email, direct social media targeting (including Facebook and Instagram for all class members whose email address, mobile phone number of name matches a Facebook or Instagram account). Initial direct notice will be reinforced with reminder and follow-up messages for the duration of the class period, which is 150 days.

To supplement skip-trace efforts, Plaintiffs counsel will issue a subpoena to the California Department of Corrections and Rehabilitation (CDCR) seeking identification of class members who are currently incarcerated in CDCR facilities. The subpoena will request that CDCR determine whether it is possible to efficiently cross-reference the class list for this case with CDCR databases to identify currently-incarcerated individuals. If CDCR is able to comply with the subpoena, Defendants agree to provide the list to CDCR solely for the purpose of identifying incarcerated class members. Defendants will not oppose any motion to compel production by CDCR.

### C.    THE CLASS NOTICE

Attached as Exhibit B is the proposed Class Notice to be distributed to Class Members. The class notice was designed to be simple, clear and accessible. The content has reading grade-level of 7.1.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court preliminarily approve the settlement and sign the proposed Preliminary Approval Order (with any administrative revisions the Court deems appropriate or necessary). The Proposed Preliminary Approval Order contains a provision approving the parties' request to issue notice using a combination of mail, email and text message. The Proposed Order contains deadlines that have been worked out among the parties and reviewed by the proposed Class Administrator.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

DATED: January 27, 2025

Respectfully submitted,

McLANE, BEDNARSKI & LITT, LLP
RAPKIN & ASSOCIATES, LLP

By: _/s/ Barrett S. Litt_____
    Barrett S. Litt

By: _/s/ Lindsay Battles_____
    Lindsay Battles

By: _/s/ Scott B. Rapkin_____
    Scott B. Rapkin

    Attorneys for Plaintiffs